**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **APALONE INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cv-3186** |
| | ) | |
| **SCHUTT SPORTS LLC and** | ) | |
| **CERTOR SPORTS LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

On December 20, 2024, Plaintiff Apalone Inc. and Defendants Schutt Sports LLC and Certor Sports LLC appeared before this Court for a claim construction hearing. <u>See</u> 12/20/24 Minute Entry. The parties presented arguments as to the proper construction of two disputed claim terms in claim 27 of U.S. Patent No. 8,938,817 ("the '817 Patent"): "attachment mechanism" and "second shell." <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> d/e 52, 53.

The Court considers each term's proper construction in turn and construes "second shell" using ordinary claim construction rules to mean the outermost layer of the external helmet cushioning

system that has a top, a side, a front, and a rear. This Court also construes "attachment mechanism" as a means-plus-function term subject to 35 U.S.C. § 112(f) with a function of coupling the second shell to the first shell in a manner that may be removable, and structures listed in the specification consisting of screws, chin-strap snaps and face mask mounts.

## I.    BACKGROUND

Dr. Steven T. Baldi is the founder and owner of Apalone, Inc. ("Plaintiff") and the inventor of the '817 Patent. Defendant Schutt and Defendant Certor both manufacture football protective helmets (collectively, "Defendants"). Defendant Certor manufactures the F7 football helmets at issue in this case and owns Defendant Schutt's assets.

On August 25, 2021, Plaintiff filed its Complaint alleging infringement of the '817 Patent, as well as U.S. Patent 10,617,167 ("the '167 patent"). d/e 1. On October 21, 2021, Defendants filed a Motion for Summary Judgment of Non-Infringement of the '817 Patent that challenged only the claim term "attachment mechanism." d/e 17. On November 15, 2021, Defendants filed a petition for inter partes review with the United States Patent and

Trademark Office challenging the validity of the '167 patent's claims, including those asserted in this litigation. See d/e 22 at pp. 2-3, d/e 22-1. The parties then jointly requested the Court stay the litigation pending the outcomes of Defendants' Motion for Summary Judgment challenging the '817 Patent and inter partes review petition challenging the '167 patent. d/e 22.

On August 15, 2022, the Patent Trial and Appeal Board issued a judgment cancelling all challenged '167 patent claims, including those asserted in this case. See d/e 29, p. 1; d/e 29-1. The '167 patent is therefore no longer at issue in this case. See d/e 33. Infringement of claim 27 of the '817 Patent remains at issue.

Claim 27 of the '817 Patent states:

> I claim: ... 27. An external cushioning system for a helmet comprising: a first shell having an outer surface; a **second shell** outward of said outer surface of said first shell; an absorptive layer disposed between the outer surface of the first shell and the **second shell**; an **attachment mechanism** to couple the **second shell** to the first shell; and wherein the **second shell** outward of said first shell by an offset distance, said offset distance being less than around one-half inch.

'817 Patent col. 12 ll. 39-50 (emphasis added).

On January 3, 2024, this Court entered an Opinion and Order denying Defendants' Motion for Summary Judgment. d/e 36. This

Court found that triable issues of fact exist concerning infringement of claim 27 of the '817 Patent and that a reasonable jury could find that the "attachment mechanism" limitation is present in the F7 Accused Products. Id. at p. 8.

On July 24, 2024, the parties filed a Joint Claim Construction Statement disputing the meanings of two terms in claim 27 of the '817 Patent:

> 1. Whether the term "shell" should be given its plain and ordinary meaning (as proposed by Apalone) or construed to mean "a rigid, semi-rigid or flexible material that covers the top, side, front, and rear of a person's head" (as proposed by Defendants); and
>
> 2. Whether the term "attachment mechanism" is subject to Section 112(f)—Apalone proposes that it is; Defendants propose that it is not.

d/e 47, p. 2. The parties' briefings later specified the first contested term, "shell," to instead be "second shell." d/e 52, p. 6; d/e 53, p. 7. On August 7, 2024, Plaintiff filed its Claim Construction Brief and on August 21, 2024, Defendants filed their Claim Construction Memorandum. d/e 52, d/e 53. On November 15, 2024, Defendants filed a Motion to Request a Claim Construction Hearing. d/e 56.

On December 20, 2024, the parties appeared before this Court for a claim construction hearing and presented arguments as to the

proper construction of "attachment mechanism" and "second shell"
in claim 27 of the '817 Patent. <u>See</u> December 20, 2024, Minute
Entry; <u>see</u> <u>also</u> d/e 52, 53.

## II.    LEGAL STANDARD

Claim construction is a question of law that "falls 'exclusively
within the province of the court,' not that of the jury." <u>Teva Pharms.</u>
<u>USA, Inc. v. Sandoz, Inc.</u>, 574 U.S. 318, 325 (2015) (quoting
<u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 372 (1996)).
"[T]he district court reviews only evidence intrinsic to the patent
(the patent claims and specifications, along with the patent's
prosecution history), [so] the judge's determination will amount
solely to a determination of law." <u>Teva</u>, 574 U.S. at 331.

Claim terms "are generally given their ordinary and customary
meaning as understood by a person of ordinary skill in the art when
read in the context of the specification and prosecution history."
<u>Thorner v. Sony Computer Ent. Am. LLC</u>, 669 F.3d 1362, 1365
(Fed. Cir. 2012) (citing <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313
(Fed. Cir. 2005) (en banc)). "There are only two exceptions to this
general rule: 1) when a patentee sets out a definition and acts as
his own lexicographer, or 2) when the patentee disavows the full

scope of a claim term either in the specification or during prosecution." <u>Thorner</u>, 669 F.3d at 1365 (citing <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1580 (Fed. Cir. 1996)).

It is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1317 (Fed. Cir. 2005). This Court "must interpret the claims in light of the specification, yet avoid impermissibly importing limitations from the specification. That balance turns on how the specification characterizes the claimed invention." <u>Alloc, Inc. v. Int'l Trade Comm'n</u>, 342 F.3d 1361, 1370 (Fed. Cir. 2003) (internal citations omitted).

Additionally, certain claim terms require special construction. Pursuant to 35 U.S.C. § 112(f), "[a]n element in a claim for a combination may be expressed as a <u>means</u> or step for performing a specified <u>function</u> without the recital of structure, material, or acts in support thereof." <u>Id.</u> (emphasis added). Such claims "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." <u>Id.</u> Claims

subject to § 112(f) are therefore often known as means-plus-function claims.

As outlined in <u>Williamson v. Citrix Online, LLC</u>, 792 F.3d 1339 (Fed. Cir. 2015), to determine whether § 112(f) applies to a claim term, Federal Circuit "precedent has long recognized the importance of the presence or absence of the word 'means.'" <u>Id.</u> at 1348. "[T]he use of the word 'means' in a claim element creates a rebuttable presumption that § 112[(f)] applies," and "the failure to use the word 'means' also creates a rebuttable presumption … that § 112[(f)] does not apply." <u>Id.</u> However, "the essential inquiry is not merely the presence or absence of the word 'means' but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." <u>Id.</u> (internal citations omitted). Notably,

> Generic terms such as "<u>mechanism</u>," "element," "device," and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word "means" because they "typically do not connote sufficiently definite structure" and therefore may invoke § 112[(f)].

<u>Id.</u> at 1350 (internal citations omitted) (emphasis added).

If a claim term is subject to § 112(f), "[c]onstruing a means-plus-function claim term is a two-step process. The court must first identify the claimed function. Then, the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function." Id. at 1351 (internal citations omitted).

### III.   CONSTRUCTION OF "SECOND SHELL"

#### A. The Court Now Construes the Claim Term "Second Shell."

Plaintiff argues that "second shell" is within the subset of terms that "mean what they say, and do not need further definition." d/e 52, p. 7. Plaintiff argues that courts are not required to specifically construe every claim term, that Defendants failed to argue that "second shell" required specific construction in their Motion for Summary Judgment filings, and that this Court repeatedly used "second shell" in its prior Opinion and Order without further defining the term. Id. at pp. 7-8.

Defendants argue, on the other hand, that this Court must construe "second shell" because the term "does not have a singular, clear lay meaning, as evidenced by the eleven different dictionary definitions that stretch across highly varied subject-matter[s]." d/e 53, p. 23. Further, Defendants argue, "second shell" is used

"according to a special meaning (not a lay meaning nor a universally understood meaning in the art)" as "the patentee provided a definition to guide [a person of ordinary skill in the relevant art of protective helmet design and manufacturing] in understanding the term." Id. at p. 24.

When "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges," claim construction "involves little more than the application of the widely accepted meaning of commonly understood words" and "general purpose dictionaries may be helpful." Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (internal citations omitted).

This Court agrees with Defendants that there is no generic meaning to the word "shell," either for a person of ordinary skill in the art (here, of sports helmet design) or in general, as demonstrated by the over one dozen definitions for the term, stretching across nearly as many subjects, found in the dictionary. See Shell, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/shell (August 28, 2025). Therefore, this Court now construes the term "second shell."

**B. Defendants' Proposed "Second Shell" Definition Does Not Read Out Any Embodiments Disclosed in the '817 Patent Specification as Plaintiff Claims.**

Defendants argue that "second shell" should be construed to mean "a rigid, semi-rigid or flexible material that covers the top, side, front and rear of a person's head." d/e 53, p. 18. In support, Defendants argue that Plaintiff defined "second shell" as such in the '817 Patent specification and that every embodiment of Plaintiff's external helmet cushioning system in the '817 Patent satisfies that definition. Id. at pp. 19-23.

Defendants cite to the '817 Patent specification language, which states that "[a]s shown in FIG. 1, the present external helmet cushioning system 10 includes a [second] shell 12, an absorptive layer 14, and at least one attachment member 16 to couple the system to an existing helmet 100." '817 Patent col. 3 ll. 8-11. The '817 Patent specification goes on to state, "[t]he shell 12 has a top 20, a side 22, a front 24, and a rear 26. Throughout the entire disclosure, the shell 12 may be a flexible material, a semi-rigid material, or a rigid material." Id. at ll. 30-33.

Plaintiff objects to Defendants' proposed definition for several reasons. d/e 52, pp. 8-12. First, Plaintiff argues that Defendants'

proposed definition "reads out embodiments disclosed in the '817 Patent specification." Id. at p. 5.

The "Field of the Invention" section of the '817 Patent specification states that the "external helmet cushioning system that can be applied over any existing helmet or incorporated into a newly manufactured helmet; in particular, helmets for high-impact sports such as football, hockey, lacrosse, snow sports, or any other sport that uses a helmet." '817 Patent col. 1 ll. 14-18. The "Detailed Description" section of the '817 Patent specification states that "the shell 12 of the present external helmet cushioning system 10' may be molded or otherwise manufactured into a shape that fits any currently manufactured helmet 100." Id. at col. 4 ll. 30-33. Therefore, Plaintiff argues, "the claimed invention of the '817 Patent could be reasonably implemented on helmets that lack a top, sides, a front, or a back." d/e 52, p. 9.

This Court must look "to whether the specification refers to a limitation only as a part of less than all possible embodiments or whether the specification read as a whole suggests that the very character of the invention requires the limitation be a part of every embodiment." Alloc, Inc. v. Int'l Trade Comm'n, 342 F.3d 1361,

1370 (Fed. Cir. 2003). "[W]here the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is entirely permissible and proper to limit the claims." Id. (citing SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1345 (Fed. Cir. 2001)).

The '817 Patent references four specific embodiments of the external helmet cushioning system: three embodiments depicted in seven figures and described in the specification, and one embodiment only described in the specification. '817 Patent col. 2 ll. 43-59; col. 7 ll. 1-2. Figure 1 and Figure 2 each depict a different embodiment of the invention and are labeled as having a top, a side, a front, and a rear. Id. at Drawing Sheets 1-2; col. 2 ll. 43-48. Figure 3, Figure 4, Figure 5, and Figure 6 all depict differently angled views of the same embodiment depicted in Figure 2. Id. at Drawing Sheets 3-5, col. 2 ll. 49-59. The '817 Patent refers only to the embodiment in Figure 5 and Figure 6 (and thus Figure 2) as a "preferred embodiment of the present external helmet cushioning system." Id. at col. 5 ll. 11-15.

Figure 7 depicts "an alternative embodiment of the external helmet conditioning system" and is not labeled as having a top, a

side, a front, or a rear. Id. at Drawing Sheet 6; col. 2 ll. 57-59.

However, Figure 7 is "cut along the same line as" Figure 5—which is

not labeled as having a top, a side, a front, and a rear but depicts

the same embodiment as does Figure 2, which is labeled as having

a top, a side, a front, and a rear. Id., see also Drawing Sheet 5.

Lastly, the '817 Patent specification states that "[i]n an alternative

embodiment not shown, the rigid shell may be comprised of two

parts, an upper part and a lower part." Id. at col. 7 ll. 1-2. However,

the '817 Patent specification does not state that the second shell

being comprised of two parts precludes the second shell from

having a top, a side, a front, and a rear. Therefore, the '817 Patent

does not conclusively depict or describe an embodiment—preferred

or otherwise—of the invention with a second shell that lacks a top,

a side, a front, or a rear.

Plaintiff cites Defendants' 2966 helmet shell as lacking a back

and argues that a person of ordinary skill in the art "would

recognize that if a second shell was molded or otherwise

manufactured into a shape that fit [the] 2966 helmet shells, the

second shell would not have a back." Id. Therefore, Plaintiff

reasons, Defendants' proposed "construction would improperly

exclude a preferred embodiment of the '817 Patent implemented on a 'currently manufactured helmet.'" Id.

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). However, Plaintiff does not establish that Defendants' 2966 helmet, or any other potentially backless helmet, was a "currently manufactured helmet," especially "for [a] high-impact sport[]," at the time of the '817 Patent's publication. '817 Patent col. 2 ll. 43-59.

## C. Defendants' "Second Shell" Definition Improperly Reads the Word "Cover" Into the '817 Patent.

Plaintiff also raises several arguments as to why a definition for "second shell" should not require coverage of the wearer's head: that the "second shell" in the '817 Patent Figure 5 embodiment "covers only a portion of the [wearer]'s head, contradicting the definition proposed by" Defendants; that Defendants "attempt[] to improperly import limitations from the specification" by defining the shell "to cover the [] top, side, front, and rear of a [wearer]'s head;"

and that Defendants' use of the term "shell plate" in their own patent indicates that a person of ordinary skill in the art "would certainly recognize that a helmet shell is not required to surround a wearer's head." d/e 52, pp. 6-9.

"When a patentee acts as his own lexicographer in redefining the meaning of particular claim terms away from their ordinary meaning, he must clearly express that intent in the written description." <u>Merck & Co. v. Teva Pharms. USA, Inc.</u>, 395 F.3d 1364, 1370 (Fed. Cir. 2005). The '817 Patent only uses the word or derivatives of "cover" twice in the context of the second shell. The '817 Patent specification states that Figure 2 "illustrates one embodiment of the external helmet cushioning system 10' installed over an existing helmet 100. The outer shell 12 of the external helmet cushioning system 10' is shown substantially <u>covering</u> the entire existing helmet 100." '817 Patent col. 4 ll. 28-30 (emphasis added). The '817 Patent specification later states,

> In another embodiment, if a forehead cushion 32 is incorporated into a semi-rigid shell 12, it may have a cover 44 that is fabric (shown in FIG. 7) if the shell is more-rigid, or forehead cushion 32 may be **covered** by the semi-rigid shell (shown in FIG. 5) as the semi-rigid shell may provide sufficient flexure to displace and utilized [sic] the full capacity of the forehead cushion 32.

Id. at col. 6 ll. 15-22 (emphasis added).

"[T]his court will not at any time import limitations from the specification into the claims." Innogenetics, N.V. v. Abbott Lab'ys, 512 F.3d 1363, 1370 (Fed. Cir. 2008) (internal citations omitted). Therefore, this Court will not read these limitations found in two embodiments in the specification—the second shell substantially covering the entire existing helmet and the second shell covering an optional forehead cushion—into the claim term "second shell."

Defendants argue in support of their definition that "each portion of the second 'shell' (i.e., the 'top,' 'side,' [']front,' and 'rear') [is] positioned over the corresponding part of the wearer's head" and "refer[s] to orientations relative to the wearer's head." d/e 53, pp. 14-15. Defendants are correct. Nonetheless, that positioning and orientation of the second shell's top, side, front, and rear does not require that the second shell cover the top, side, front, and rear, respectively, of the wearer's head.

Defendants further argue that "[e]very second 'shell 12' shown or described in the patent has" a top, a side, a front, and a rear.'" Id. at p. 21. Defendants are correct—as described earlier, the '817

Patent does not conclusively depict an embodiment, preferred or otherwise, of the invention with a shell that lacks a top, a side, a front, or a rear. However, that does not require that the second shell cover the top, side, front, and rear of the wearer's head.

**D. The Court Construes "Second Shell" to Mean the Outermost Layer of the External Helmet Cushioning System that has a Top, a Side, a Front, and a Rear.**

Since neither party's proposed definition aligns with the '817 Patent, this Court turns to "the written description for guidance as to the meaning of the claims." Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005). "[W]here the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is entirely permissible and proper to limit the claims." Alloc, Inc. v. Int'l Trade Comm'n, 342 F.3d 1361, 1370 (Fed. Cir. 2003).

The '817 Patent specification states, "[t]he shell 12 has a top 20, a side 22, a front 24, and a rear 26. Throughout the entire disclosure, the shell 12 may be a flexible material, a semi-rigid material, or a rigid material." '817 Patent col. 3 ll. 30-33. Plaintiff does not offer an example of a first helmet shell lacking a top, a side, a front, or a rear manufactured at the time "of the effective

filing date of the patent application." <u>Phillips v. AWH Corp.</u>, 415

F.3d 1303, 1313 (Fed. Cir. 2005). The '817 Patent does not

conclusively depict an embodiment, preferred or otherwise, of the

invention with a second shell lacking a top, a side, a front, or a rear.

The '817 Patent uses the term "shell 12" forty-eight times, all

in the "Detailed Description" of the specification. <u>See generally</u> '817

Patent. The first four uses of "shell 12" appear in the first full

paragraph of column 3:

> As shown in FIG. 1, the present external helmet
> cushioning system 10 includes a **shell 12**, an absorptive
> layer 14, and at least one attachment member 16 to couple
> the system to an existing helmet 100. The attachment
> mechanisms 16 may removeably [sic] couple the system to
> the helmet 100. As shown, the **shell 12 is** the outermost
> layer and the absorptive layer 14 is generally disposed
> between the **shell 12** and the outer surface 102 of existing
> helmet 100…The **shell 12 has** a top 20, a side 22, a front
> 24, 30 and a rear 26.

'817 Patent col. 3 ll. 8-15, 30 (emphasis added).

In the '817 Patent's subsequent forty-four uses of "shell 12,"

the term is limited in some way: language indicating possibility,

such as the word "may," accompanies the term; the term is

explicitly used to depict a specific figure drawing or embodiment of

the invention; and/or the shell in question is specified as made

from a particular material, whether "flexible," "semi-rigid" or "rigid." See '817 Patent col. 3 ll. 32, 34, 36, 39, 41, 44, 46, 49, 52, 54, 56, 63, 65, 67; col. 4 ll. 1, 3, 4, 6, 13, 28, 30, 47, 53, 55, 58, 64; col. 5 ll. 14, 62, 65; col. 6 ll. 3, 4-5, 16, 18, 24, 30, 37, 41, 42, 44, 46, 61; col. 7 l. 24; col. 8 ll. 4, 35.

Also instructive is the Plaintiff's use of differing versions of the claim term "external helmet cushioning system" throughout the specification. Plaintiff adds an apostrophe and uses "external helmet cushioning system 10' " to reference a specific embodiment of the external helmet cushioning system as depicted in one of the patent's figures. For example, the third full paragraph in column 4 of the '817 Patent begins, "FIG. 2 illustrates one embodiment of the external helmet cushioning system 10' installed over an existing helmet 100." '817 Patent col. 4 ll. 26-27.

Conversely, Plaintiff drops the apostrophe and uses "external helmet cushioning system 10" to reference the system generally. For example, the first full paragraph of column 3 of the '817 Patent listed earlier references Figure 1—not by listing the components of the external helmet cushioning system shown in that particular figure, but by listing the components of the external helmet

cushioning system overall, including but not exclusively as depicted in Figure 1:

> As shown in FIG. 1, the present external helmet cushioning system 10 includes a shell 12, an absorptive layer 14, and at least one attachment member 16 to couple the system to an existing helmet 100.

'817 Patent col. 3 ll. 8-11. Therefore, the "shell 12" as described in that paragraph is presumably the "shell 12" of the invention at large, including but not limited to the shell depicted in Figure 1.

Those different uses of "shell" and "external helmet cushioning system" throughout the '817 Patent inform their unique use in the first full paragraph of column 3 of the patent. There, Plaintiff "sets out a definition and acts as his own lexicographer" as to the term "second shell": "the outermost layer" of the external helmet cushioning system that "has a top[], a side[], a front[], and a rear[]." See Thorner v. Sony Computer Ent. Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012); '817 Patent col. 3 ll. 8-15, 30-31.

The Court notes that it must look "to whether the specification refers to a limitation only as a part of less than all possible embodiments or whether the specification read as a whole suggests that the very character of the invention requires the limitation be a

part of every embodiment." <u>Alloc, Inc. v. Int'l Trade Comm'n</u>, 342
F.3d 1361, 1370 (Fed. Cir. 2003). "[W]here the specification makes
clear at various points that the claimed invention is narrower than
the claim language might imply, it is entirely permissible and
proper to limit the claims." <u>Id.</u> (citing <u>SciMed Life Sys., Inc. v.
Advanced Cardiovascular Sys., Inc.</u>, 242 F.3d 1337, 1345 (Fed. Cir.
2001)).

As discussed earlier, the '817 Patent does not conclusively
depict or describe an embodiment—preferred or otherwise—of the
invention with a second shell that lacks a top, a side, a front, or a
rear. Also, all seven figures in the '817 Patent show the "shell 12" as
the outermost layer of the external helmet cushioning system. <u>See
id.</u> at Drawing Sheets 1-6. This aligns with the specification's "Field
of the Invention" section asserting that the invention "can be
applied over any existing helmet." '817 Patent col. 1 l. 15. As such,
"the specification read as a whole suggests that the very character
of the invention requires the limitation be a part of every
embodiment" with regard to the second shell being the outermost
layer with a top, a side, a front, or a rear. <u>Alloc, Inc. v. Int'l Trade
Comm'n</u>, 342 F.3d 1361, 1370 (Fed. Cir. 2003).

Therefore, this Court follows the lead of the Plaintiff acting as his own lexicographer and construes "second shell" to mean the outermost layer of the external helmet cushioning system that has a top, a side, a front, and a rear.

## IV.    CONSTRUCTION OF "ATTACHMENT MECHANISM"

### A. The Court Now Construes the Claim Term "Attachment Mechanism."

Plaintiff argues that Defendants conceded that this Court should construe "attachment mechanism" as a means-plus-function claim term subject to § 112(f). d/e 52, p. 4. Plaintiff cites Defendants' assertion in their Motion for Summary Judgment that "[t]he Court should construe the term 'attachment mechanism'...as a 'means[-]plus[-]function' term under § 112(f)." Id.; see also d/e 17, p. 30. Plaintiff also cites this Court's language in its prior Opinion and Order that "[t]he parties agree that the term 'attachment mechanism' is a means-plus-function claim limitation under 35 U.S.C. § 112(f)." d/e 52, p. 4; d/e 36, p. 8.

Plaintiff asserts that further construction of "attachment mechanism" is unnecessary because this Court properly construed the term as a means-plus-function term under § 112(f) in this

Court's last Opinion and Order. See d/e 52, p. 5. This Court's last Opinion and Order noted that "attachment mechanism" consisted of "chin-strap snaps/screws and face mask mounts," "includ[ing] screw heads adapted to receive a Phillips style screw bit," that "removably coupl[e] the second shell to the first shell." d/e 36, pp. 8-10. That Opinion and Order also noted, "[t]he parties agree...that the two disclosed means of the 'attachment mechanism' in the '817 Patent are (1) chin-strap snaps/screws and (2) face-mask mounts and their equivalents." Id. at p. 8.

While Plaintiff's citations are correct, in the interest of clarity and completion, the Court now construes the claim term "attachment mechanism."

## B. Defendants' Arguments That "Attachment Mechanism" Should Be Subject to Ordinary Claim Construction Rules Are Not Compelling.

Defendants raise several arguments as to why "attachment mechanism" should be subject to ordinary claim construction rules. d/e 53, p. 10. First, Defendants argue that claim 27 does not use means-plus-function language and is, thus, presumed to be subject to ordinary claim construction rules under Williamson v. Citrix Online, LLC, 792 F.3d 1339 (Fed. Cir. 2015). d/e 53, p. 11.

However, as discussed earlier, Williamson also states that "mechanism" is in a class of words that "may be used in a claim in a manner that is tantamount to using the word 'means' because they typically do not connote sufficiently definite structure and therefore may invoke § 112[(f)]." Williamson at 792 F.3d at 1350 (internal citations omitted).

Further, the cases Defendants cite in support do not cover both parts of the term "attachment mechanism." See d/e 53, p. 11. Additionally, all but one of the cases Defendants cite are from a fellow district court, all but one of which are located outside of this Court's circuit and none of which bind this Court. Id., see also Al-Site Corp. v. VSI Int'l, 174 F.3d 1308, 1319 (Fed. Cir. 1999) ("[A]n attaching portion . . . supplie[d] structural, not functional, terms" and "precluded" treatment as a "means-plus-function" claim limitation); UV Partners, Inc. v. Proximity Sys., Inc., No. 20-CV-4210, 2022 WL 2757837, at *11 (S.D. Tex. July 14, 2022) ("attachment device" connotes sufficient structure; Section 112(f) does not apply); Nanology Alpha LLC v. WITec Wissenschaftliche Instrumente und Technologie GmbH, No. 6:16-CV-00445-RWS, 2017 WL 5905272, at *10 (E.D. Tex. Nov. 30, 2017) ("movement

mechanism" connotes sufficient structure; Section 112(f) does not apply); <u>Blackbird Tech LLC v. ELB Elecs.</u>, No. 15-CV-56 (RGA), 2016 WL 7451622, at *5 (D. Del. Dec. 28, 2016), <u>vacated on other grounds</u>, 895 F.3d 1374 (Fed. Cir. 2018) ("fastening mechanism" connotes sufficient structure; Section 112(f) does not apply); <u>Uni-Sys, LLC v. United States Tennis Ass'n Nat'l Tennis Ctr. Inc.</u>, No. 17-CV-147(KAM)(CLP), 2020 WL 3960841, at *13 (E.D.N.Y. July 13, 2020) ("retention mechanism" connotes sufficient structure; Section 112(f) does not apply); <u>Bonutti Rsch., Inc. v. Lantz Med., Inc.</u>, No. 114CV00609SEBMJD, 2016 WL 247752, at *16 (S.D. Ind. Jan. 21, 2016) ("bending mechanism" connotes sufficient structure; Section 112(f) does not apply).

Next, Defendants argue that the '817 Patent specification identifies examples supporting the structural scope of "attachment mechanism"— "screws (item 16), chin-strap snaps (item 104), and face-mask mounts (item 106)"—and "does not specially define 'attachment mechanism' or disavow coverage of any structures that would fall within the scope of that term." d/e 53, p. 12. Defendants cite in support <u>Phillips v. AWH Corporation</u>, 415 F.3d 1303, 1316–17 (Fed. Cir. 2005), which quotes the United States Patent and

Trademark Office rule that patent application claims "must conform to the invention as set forth in the remainder of the specification" and that claim terms "must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description." <u>Id.</u> (quoting 37 C.F.R. § 1.75(d)(1)).

The Federal Circuit has held that "even if the claim element specifies a function, if it also recites sufficient structure or material for performing that function, § 112[(f)] does not apply." <u>Rodime PLC v. Seagate Tech., Inc.</u>, 174 F.3d 1294, 1302 (Fed. Cir. 1999). However, Defendants' cited examples of "attachment mechanism" are in the '817 Patent specification, not in any of the patent's claims. <u>See</u> '817 Patent, col. 4 ll. 33-44. "It is the <u>claims</u>, not the written description, which define the scope of the patent right," such that a "court may not import limitations from the written description into the claims." <u>Williamson</u>, 792 F.3d at 1346 (citing <u>Laitram Corp. v. NEC Corp.</u>, 163 F.3d 1342, 1347 (Fed. Cir. 1998)) (emphasis in original). Therefore, the '817 Patent specification containing examples of the "attachment mechanism" structure, without defining or delineating exclusions from "attachment

mechanism," does not preclude § 112(f) from applying to "attachment mechanism."

Plaintiff's patent specification may not "specially define 'attachment mechanism' or disavow coverage of any structures that would fall within the scope of that term." d/e 53, p. 12. But that does not run afoul of the United States Patent and Trademark Office rule that claims "must conform to the invention as set forth in the remainder of the specification" and that "the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description." 37 C.F.R. § 1.75(d)(1). "Attachment mechanism" in claim 27 of the '817 Patent conforms to Plaintiff's patented invention as set forth in Defendants' referenced specification terms "screws (item 16), chin-strap snaps (item 104), and face-mask mounts (item 106)." d/e 53, p. 12. "Attachment mechanism," as used in claim 27, has clear support in the description's "screws (item 16), chin-strap snaps (item 104), and face-mask mounts (item 106)" such that the meaning of "attachment mechanism" is ascertainable by reference to the description. See '817 Patent, col. 4 ll. 33-44.

Next, Defendants argue that "attachment mechanism" should be construed using ordinary claim interpretation rules because Plaintiff did not dispute construing "attachment mechanism" during the prosecution of the application that led to the '817 Patent before the Patent Office. d/e 53, p. 12. However, Defendants then admit that they did not dispute Plaintiff's asserted construction of "attachment mechanism" as a means-plus-function term in their Motion for Summary Judgment. Id. at pp. 16-18; see also d/e 17, p. 30. Since both parties have changed course as to their prior definitions, Defendants' final statements negate each other.

**C. This Court Construes "Attachment Mechanism" as a Means-Plus-Function Term Subject to § 112(f).**

Neither party references any Federal Circuit Court of Appeals cases directly assessing whether a patent claim term of "attachment mechanism" is subject to means-plus-function construction. However, the Court has reviewed three Federal Circuit cases that shed light on this inquiry.

In Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277 (Fed. Cir. 2002), the Federal Circuit described a patent claim's "means for affixing" direct light reflectors to a stem as an

"attachment mechanism." Id. at p. 1282 (emphasis added). The Federal Circuit then noted that "[t]he district court does not appear to have treated this [affixing means] claim language as a means-plus-function limitation according to 35 U.S.C. § 112[(f)]. The parties have not appealed this aspect of the district court's claim construction." Id. at 1283 n. 1. Thus, the Federal Circuit seemed to view "attachment mechanism" as plausibly subject to claim construction as a means-plus-function term—and to view its decision not to subject that claim to § 112(f) as warranting an explanation of the underlying procedural reasons.

In Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580, (Fed. Cir. 1996), the Federal Circuit considered the claim term "detent mechanism." Id. at 1583. That the claim term was "defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function,'" the Federal Circuit held, as "[m]any devices take their names from the functions they perform." Id. In that vein, "the noun 'detent' denotes a type of device with a generally understood meaning in the mechanical arts, even though the definitions are expressed in functional terms." Id.

Subsequently, in Massachusetts Institute of Technology and

Electronics for Imaging, Inc. v. Abacus Software, 462 F.3d 1344

(Fed. Cir. 2006), the Federal Circuit considered the term "colorant

selection mechanism" in the wake of its decision in Greenberg:

> In contrast [to the term "detent"], the term "colorant
> selection," which modifies "mechanism" here, is not
> defined in the specification and has no dictionary
> definition, and there is no suggestion that it has a
> generally understood meaning in the art. We therefore
> agree with the district court that "colorant selection
> mechanism" does not connote sufficient structure to a
> person of ordinary skill in the art to avoid [§] 112[(f)]
> treatment.

Id. at 1354.

Taking all of the parties' arguments and applicable caselaw

into consideration, this Court construes "attachment mechanism"

as a means-plus-function term under § 112(f). Pursuant to

Williamson, the use of the term "mechanism" in claim 27 "is

tantamount to using the word "means," as it does "not connote

sufficiently definite structure…and therefore invoke[s]" § 112(f).

Williamson at 792 F.3d at 1350 (internal citations omitted). In other

words, use of the word "mechanism" is akin to "use of the word

'means' in [claim 27, and] creates a rebuttable presumption that

§ 112[(f)] applies." <u>Id.</u> at 1348. Defendants' arguments do not rebut that presumption.

The nature of the word "attachment" also supports the term "attachment mechanism" falling under § 112(f). The dictionary definitions of the noun "attachment" are quite broad: "a seizure by legal process," "the state of being personally attached," "a device attached to a machine or implement," "the physical connection by which one thing is attached to another," "the process of physically attaching," and "a separate document or file that is included and sent with an electronic message (such as an email or text message)." <u>Attachment</u>, <u>Merriam-Webster.com Dictionary,</u> Merriam-Webster, https://www.merriam-webster.com/dictionary/attachment (August 28, 2025).

The two definitions that refer to a physical object—"a device attached to a machine or implement" and "the physical connection by which one thing is attached to another"—are most relevant to this inquiry. <u>Id.</u> But those two definitions define the "attachment" object's orientation relative to other objects—either affixed to another object or connected between two other objects—and do not define the "attachment" object itself. Unlike the term "detent," there

is no indication that the term "attachment" denotes "a type of device
with a generally understood meaning in the mechanical arts."
Greenberg, 91 F.3d at 1583.

Since "the term '[attachment],' which modifies 'mechanism'
here, is not defined in the specification," has no applicable
dictionary definition, "and there is no suggestion that it has a
generally understood meaning in the art," the Court finds that
"'[attachment] mechanism' does not connote sufficient structure to
a person of ordinary skill in the art to avoid [§] 112[(f)] treatment."
Abacus Software, 462 F.3d at 1354. Therefore, this Court construes
"attachment mechanism" as a means-plus-function claim limitation
subject to § 112(f).

This Court "must [next] identify the claimed function" of the
term "attachment mechanism." Williamson, 792 F.3d at 1351. As
stated in the '817 Patent, the function of the "attachment
mechanism" is to "couple the second shell to the first shell" in a
manner that may be "removabl[e]." '817 Patent col. 12 ll. 46-47, col.
3 ll. 11-12. Then, this Court "must determine what structure, if
any, disclosed in the specification corresponds to the claimed
function." Williamson, 792 F.3d at 1351. Pursuant to the '817

Patent, the structures disclosed in the specification corresponding to the claimed function are screws as in the embodiments depicted in Figures 1 and 2, as well as "chin-strap snaps" and "face mask mounts" as in the embodiment depicted in Figure 2. <u>See</u> '817 Patent, Drawing Sheets 1-2, col. 4 ll. 33-4.

## V.   CONCLUSION

For the reasons stated, this Court construes "second shell" using ordinary claim construction rules to mean the outermost layer of the external helmet cushioning system that has a top, a side, a front, and a rear. Additionally, this Court construes "attachment mechanism" as a means-plus-function term subject to § 112(f) with a function of coupling the second shell to the first shell in a manner that may be removable, and structures listed in the specification consisting of screws, chin-strap snaps and face mask mounts.

**ENTERED: August 29, 2025.**

**FOR THE COURT:**

<u>/s/ Sue E. Myerscough</u>
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**