E-FILED
Monday, 10 August, 2026  09:09:24 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| **APALONE INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 21-cv-3186** |
| ) | |
| **SCHUTT SPORTS LLC and** ) | |
| **CERTOR SPORTS LLC** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

Before the Court is Defendants Schutt Sports LLC and Certor Sports LLC's Motion to Exclude Peter D. Halstead from Testifying that the F7 Helmet has a "Second Shell" or Infringes the '817 Patent (d/e 68). Because Mr. Halstead properly adheres to this Court's construction of the claim term "second shell," Defendants' Motion (d/e 68) is DENIED.

## I.    BACKGROUND

Dr. Steven T. Baldi is the founder and owner of Apalone, Inc. ("Plaintiff") and the inventor of the '817 Patent. Defendant Schutt and Defendant Certor (collectively, "Defendants") both manufacture

football protective helmets. Defendant Certor manufactures the F7 football helmets at issue in this case and owns Defendant Schutt's assets.

On August 25, 2021, Plaintiff filed its Complaint alleging infringement of the '817 Patent. d/e 1. Claim 27 of the '817 Patent states:

> I claim: … 27. An external cushioning system for a helmet comprising: a first shell having an outer surface; a **second shell** outward of said outer surface of said first shell; an absorptive layer disposed between the outer surface of the first shell and the **second shell**; an **attachment mechanism** to couple the **second shell** to the first shell; and wherein the **second shell** outward of said first shell by an offset distance, said offset distance being less than around one-half inch.

'817 Patent col. 12 ll. 39-50 (emphasis added).

On July 24, 2024, the parties filed a Joint Claim Construction Statement disputing the meanings of the terms "attachment mechanism" and "shell" in claim 27 of the '817 Patent. See d/e 47, p. 2. The parties' briefings later specified the contested term "shell" to instead be "second shell." d/e 52, p. 6; d/e 53, p. 7. On December 20, 2024, the parties appeared before this Court for a claim construction hearing and presented arguments as to the proper construction of "attachment mechanism" and "second shell"

in claim 27 of the '817 Patent. See December 20, 2024 Minute Entry; see also d/e 52, 53.

On August 29, 2025, this Court entered an Opinion construing "second shell" using ordinary claim construction rules to mean the outermost layer of the external helmet cushioning system that has a top, a side, a front, and a rear and "attachment mechanism" as a means-plus-function term subject to § 112(f) with a function of coupling the second shell to the first shell in a manner that may be removable, and structures listed in the specification consisting of screws, chin-strap snaps, and face mask mounts. See d/e 64.

On January 8, 2026, Defendants filed a Motion to Exclude Peter D. Halstead from Testifying that the F7 Helmet Has a "Second Shell" or Infringes the '817 Patent. d/e 68. On January 29, 2026, Plaintiff filed a Response. d/e 83. On February 10, 2026, Defendants filed a Reply. d/e 84. Defendants also filed a sealed Motion to Preclude the Expert Report and Testimony of Francis X. Burns, see d/e 69, which this Court will address in a separate, sealed order.

On June 23, 2026, the parties appeared before this Court for oral arguments on Defendants' pending Motions (d/e 68 and 69). See June 23, 2026 Minute Entry. The parties presented arguments on the admissibility of the expert reports and testimony of Plaintiff's experts Peter D. Halstead and Francis X. Burns. See id.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), govern the admissibility of expert opinions. Golpalratnam v. Hewlett-Packard Co., 877 F.3d 771, 778 (7th Cir. 2017). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

Under Daubert, the district court is the gatekeeper, ensuring that (1) the expert is qualified; (2) the expert's methodology is reliable; and (3) the expert's testimony is relevant, i.e., will help the jury understand or decide the case. Golpalratnam, 877 F.3d at 778–79. The gatekeeper cannot cross the line into the jury's province. "If the proposed expert testimony meets the Daubert threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" Lapsley v. Xtek, Inc., 689 F.3d 802, 805 (7th Cir. 2012) (quoting Daubert, 509 U.S. at 596).

Expert testimony "untethered from the district court's claim constructions" can constitute "methodological unsoundness...that provides an independent basis" for inadmissibility. Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC, 127 F.4th 1340, 1349–50 (Fed. Cir.), cert. denied, 146 S. Ct. 187, 223 L. Ed. 2d 57 (2025).

### III.  ANALYSIS

As an initial matter, Defendants argue that Mr. Halstead is a percipient witness who relies on his personal experience with Apalone founder Dr. Baldi. See d/e 68, p. 12. However, Defendants

offer no caselaw as to why this, if true, should preclude Mr. Halstead from also being able to serve as an expert witness so long as he satisfies the requirements of Rule 702.

Defendants argue that Mr. Halstead's opinion regarding the "second shell" must be excluded because his opinion contradicts this Court's construction of the term. d/e 68, p. 17. Specifically, Defendants argue that "the Court construed 'second shell' in a way that requires a portion of the 'second shell' to be 'positioned over' the side of the wearer's head" and that Mr. Halstead contradicted that construction by testifying that the F7 helmet's Tektonic Plate was "not positioned over the side of the head" and constituted a second shell. Id.

However, Defendants mischaracterize the Court's construction of "second shell." Defendants' claim construction brief proposed a construction of "second shell" to mean "a rigid, semi-rigid or flexible material that covers the top, side, front and rear of a person's head." d/e 53, p. 18. Defendants stated that, "[a]s shown in Figure 1—which depicts the invention, not just one embodiment—each portion of the second 'shell' (i.e., the 'top,' 'side,' [']front,' and 'rear') [is] positioned over the corresponding part of the wearer's head[,]"

further citing Figures 2, 3, and 4. Id. at pp. 19-20. Figures 1 and 2 in the '817 Patent each depict a different embodiment of the invention and are labeled as having a top, a side, a front, and a rear. Id. at Drawing Sheets 1-2; col. 2 ll. 43-48. Figures 3 and 4 each depict differently angled views of the same embodiment depicted in Figure 2. Id. at Drawing Sheets 3-4, col. 2 ll. 49-52.

Defendants' claim construction brief further stated that, "[t]he text of the '817 specification further confirms that, in the context of the 'outer' or 'second' shell, the terms 'top[,]' 'side[,]' 'front[,]' and 'rear' refer to orientations relative to the wearer's head," citing some of the specification's description of Figure 3 and Figure 4: "FIG. 3 shows the placement of a forehead cushion 32 proximate the front 24 and a rear cushion 30 proximate the rear 26 of shell 12;" "[in FIGS. 3 and 4] the rear cushion 30 is compressed … when the back of a player's head impacts the ground." d/e 53, p. 20 (emphasis added) (citing '817 Patent col. 4 ll. 53-62).

The Court ultimately rejected Defendants' proposed construction in the section of the Court's claim construction opinion titled, "Defendants' 'Second Shell' Definition Improperly Reads the Word 'Cover' Into the '817 Patent," noting:

Defendants argue in support of their definition that "each portion of the second 'shell' (i.e., the 'top,' 'side,' [']front,' and 'rear') [is] positioned over the corresponding part of the wearer's head" and "refer[s] to orientations relative to the wearer's head." d/e 53, pp. 14-15. Defendants are correct. Nonetheless, that positioning and orientation of the second shell's top, side, front, and rear does not require that the second shell cover the top, side, front, and rear, respectively, of the wearer's head. Defendants further argue that "[e]very second 'shell 12' shown or described in the patent has" a top, a side, a front, and a rear.'" Id. at p. 21. Defendants are correct—as described earlier, the '817 Patent does not conclusively depict an embodiment, preferred or otherwise, of the invention with a shell that lacks a top, a side, a front, or a rear. However, that does not require that the second shell cover the top, side, front, and rear of the wearer's head.

d/e 64, pp. 14, 16-17.

"[W]here the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is entirely permissible and proper to limit the claims." Alloc, Inc. v. Int'l Trade Comm'n, 342 F.3d 1361, 1370 (Fed. Cir. 2003). The '817 Patent's depictions and descriptions of Figures 1, 2, 3, and 4—positioned and oriented as Defendants correctly identified—supported this Court's conclusion, in dicta, that the second shell need not cover the top, side, front, and rear of the wearer's head. But, those depictions and descriptions do not necessarily "make[] clear at various points that the claimed

Page **8** of **15**

invention is narrower than the claim language might imply" and therefore render it "entirely permissible and proper to limit the claims" with such positional language. Id.

The Court utilized no such positional language in construing "second shell" using ordinary claim construction rules to mean: the outermost layer of the external helmet cushioning system that has a top, a side, a front, and a rear. See d/e 64, pp. 1-2, 17, 22, 23. The Court's opinion repeated this construction, identified as such, four times. Id. The Court therefore assesses Mr. Halstead's expert report for use of this same construction of "second shell."

Defendants then argue that Mr. Halstead's report fails to "substantively address[] whether the F7 has a 'second shell'—much less set forth any analysis of that requirement." d/e 68, p. 13.

The Court finds that Mr. Halstead's expert report and deposition testimony demonstrate that he addressed and analyzed whether the F7 had a "second shell" as the Court construed the term. Mr. Halstead wrote in paragraph 45 of his report:

> I obtained an F7 helmet from our sample retain library. After determining specifically the focus was centered around claim 27 of the 8,938,817 patent and the existence of an outermost layer of the external helmet cushioning system that has a top, a side, a front and a rear, I

continued my evaluation with focus on an absorptive layer disposed between the outer surface of the first shell and second shell, as well as an attachment mechanism to couple the second shell to the first shell.

d/e 68-3, ¶ 45. This sentence can be reasonably read to state that Mr. Halstead focused his evaluation on other features "[a]fter determining…the existence of an outermost layer of the external helmet cushioning system that has a top, a side, a front and a rear." Id. In other words, Mr. Halstead stated that he "determin[ed]" that a "second shell"—as construed by this Court to mean the "outermost layer of the external helmet cushioning system that has a top, a side, a front, and a rear"—"existe[d]" on the F7 helmet. Id., see also d/e 64, pp. 1-2, 17, 22, 23.

Defendants also cite to Mr. Halstead's deposition transcript in arguing that "he was under the mistaken impression that the Court had already decided that the F7 had a 'second shell.'" d/e 68, p. 13. The relevant question and answer in the transcript read, in full:

> Q. -- where do I find -- sorry, sir, let me finish. What I'm asking you is where do I find in your report the analysis that led you to the conclusion that the outer shell -- what you call the outer shell in the F7 Patent has a top, a front, a rear, and a side?

> A. I accepted that the Court determined that it had a front, a top, a side, and a rear. And when I took it out and looked at it, I agreed it has a front, a top, a side and a rear.
>
> So it seems to me that the Court already determined that that was what was in existence. And all I had to do was make these measurements. And that's my work product is these these [sic] measurements, which I went out of my way to do.
>
> There may even be a video of all of these. I am happy to meet you some place, take one [sic] these helmets apart, and repeat the measurements.

d/e 94, p. 230, lns. 7-24.

Regardless of Mr. Halstead's perception of any determinations by the Court, he testified that he "looked at" what he called the F7 helmet's outer shell and subsequently determined that "it has a front, a top, a side and a rear." Id. at lns. 15-16. That testimony aligns with this Court's construction of "second shell" to mean the outermost layer of the external helmet cushioning system that has a top, a side, a front, and a rear. See d/e 64, pp. 1-2, 17, 22, 23.

Defendants also challenge Exhibit E of Mr. Halstead's expert report when compared with his deposition testimony. See d/e 68, pp. 13-14. Mr. Halstead's expert report concludes, "[f]or the foregoing reasons presented above, and as shown in the attached claim chart, Exhibit E, it is my opinion that the Schutt F7 Helmet infringes claim 27 of the '817 Patent." d/e 68-3, p. 11. Exhibit E

Page **11** of **15**

includes a chart containing, in relevant part, the text "[second shell is an outermost layer of the external helmet cushioning system <u>that has a top, a side, a front, and a rear</u>]" accompanying four photos of different angles of an F7 Tektonic Plate labeled "top," "side," "front," and "rear." d/e 68-3, pp. 84-85 (emphasis in original). Plaintiff's Response asserts that Mr. Halstead's report incorporates Exhibit E "by reference into the body of his analysis." d/e 83, p. 14.

Defendants emphasize Mr. Halstead's statements during his deposition testimony that he did not prepare or label the Exhibit E photograph accompanying his expert report and does not know who did beyond that it "was more likely an attorney." d/e 68, p. 14 (citing d/e 68-4, p. 164, lns. 6-21). However, Defendants offer no caselaw requiring an expert to have prepared, or know who prepared, the exhibits accompanying their expert report.

Defendants also argue that "Mr. Halstead's 'opinion'—set forth only in the lawyer-drafted chart attached to the Halstead Report— shows, at Mr. Halstead's own admissions, a purported 'second shell' that is a small object fitted entirely over the <u>top</u> of the wearer's head." d/e 68, p. 17.

Defendants point to Mr. Halstead's deposition testimony that: "that's a fair statement [that the whole object in the photograph is positioned over the top of the head to protect the crown from impact]," d/e 94, p. 167, lns. 19-25; "the side of this piece goes to the side of the helmet," id. at p. 170, lns. 18-21; "that's correct [that the portion of the plate labeled 'side' is not positioned over the side of the head]. It's the side of this piece of plastic," id. at p. 171, lns. 18-22; "that surface that was adjacent to those ear holes would be the sides, either left or right," id. at p. 210, lns. 21-25; and "if there's a shell on the side where my ear is, I would call that the side of the shell," id. at p. 211, lns. 21-22. See d/e 68, pp. 14-15, 17.

The Court notes that such positioning and orientation language of the type highlighted in Mr. Halstead's deposition testimony does not appear in the Court's construction of "second shell." See d/e 64, pp. 1-2, 17, 22, 23. Further, the Court finds that none of that testimony by Mr. Halstead contradicts or negates paragraph 45 of his report and lines 14 through 16 of page 230 of his deposition testimony transcript—his findings that the F7 helmet's Tektonic Plate constituted a "second shell," the outermost layer of the external helmet cushioning system that has a top, a

side, a front, and a rear. See d/e 68-3, ¶ 45; see also d/e 94, p. 230, lns. 14-16.

The party seeking to introduce expert witness testimony must establish that it is more likely than not that the testimony will assist the trier of fact to understand the evidence or to determine a fact at issue, is based on sufficient facts or data, and is the product of reliable principles and methods applied to the facts of the case. FED. R. CIV. P. 702.

Plaintiff argues that Mr. Halstead, in addition to adhering to this Court's claim construction of the term "second shell," is well-qualified to serve as an expert witness and used reliable methodology in his infringement determination, such that his expert testimony is admissible. See d/e 83, pp. 1, 8-11, 13-15. Defendants state in their Reply that "Mr. Halstead's qualifications and fitness to testify are irrelevant to the Motion [to exclude Mr. Halstead's expert testimony], which addresses only whether he adhered to the Court's constructions." d/e 84, p. 5.

The Court finds that Plaintiff has demonstrated that Mr. Halstead satisfies the requirements of Rule 702, that Mr. Halstead's opinion properly adheres to this Court's construction of the claim

term "second shell," and that Defendants do not otherwise dispute Plaintiff's assertions that Mr. Halstead otherwise satisfies Rule 702.

## IV.  CONCLUSION

The Court finds that Mr. Halstead properly applied this Court's construction of the claim term "second shell"—the outermost layer of the external helmet cushioning system that has a top, a side, a front, and a rear—in his opinion that the Schutt F7 Helmet's Tektonic Plates constitute a "second shell." See d/e 64, pp. 1-2, 17, 22, 23; see also d/e 68-3, ¶ 45; see also d/e 94, p. 230, lns. 14-16. Therefore, Defendants' Motion (d/e 68) is DENIED.


**IT IS SO ORDERED.**
**ENTERED: August 10, 2026.**
**FOR THE COURT:**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**