E-FILED
Saturday, 26 September, 2026 06:22:38 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **APALONE INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cv-3186** |
| | ) | |
| **SCHUTT SPORTS LLC and CERTOR SPORTS LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

Before the Court is Defendants Schutt Sports LLC and Certor Sports LLC's Motion for Reconsideration of Defendants' Motion to Exclude Plaintiff's Expert Peter D. Halstead; or, in the Alternative, for O2 Micro Clarification of the Court's Construction of "Second Shell (d/e 108). Specifically, Defendants seek to preclude Mr. Halstead from testifying that Defendants' F7 Helmet has a "second shell" and that it Infringes the '817 Patent. Because the Court committed a manifest error of law when it held that Halstead properly adhered to the Court's claim construction, Defendants' Motion is GRANTED.

## I. BACKGROUND

Dr. Steven T. Baldi is the founder and owner of Apalone, Inc. ("Plaintiff") and the inventor of the '817 Patent. Defendant Schutt and Defendant Certor (collectively, "Defendants") both manufacture football protective helmets. Defendant Certor manufactures the F7 football helmets at issue in this case and owns Defendant Schutt's assets.

On August 25, 2021, Plaintiff filed its Complaint alleging infringement of the '817 Patent. d/e 1. Claim No. 27 of the '817 Patent states:

> I claim: … 27. An external cushioning system for a helmet comprising: a first shell having an outer surface; a second shell outward of said outer surface of said first shell; an absorptive layer disposed between the outer surface of the first shell and the second shell; an attachment mechanism to couple the second shell to the first shell; and wherein the second shell outward of said first shell by an offset distance, said offset distance being less than around one-half inch.

'817 patent, col. 12 ll. 39-50 (emphasis added).

On August 29, 2025, this Court entered an Opinion construing "second shell" using ordinary claim construction rules to mean the outermost layer of the external helmet cushioning system that has a top, a side, a front, and a rear. d/e 64, p. 17. The Court

agreed that the top, sides, front, and rear are "positioned over" the side of the wearer's head, but that "positioned over" need not mean full coverage of the corresponding part of the wearer's head. Id. at 16.

On January 8, 2026, Defendants filed a Motion to Exclude Peter D. Halstead from Testifying that the F7 Helmet Has a "Second Shell" or Infringes the '817 Patent. d/e 68. On January 29, 2026, Plaintiff filed a Response. d/e 83. On February 10, 2026, Defendants filed a Reply. d/e 84. On June 23, 2026, the Court heard oral arguments on the Defendants' Motion to Exclude. See June 23, 2026 Minute Entry.

On August 10, 2026, the Court denied the Defendants' motion, holding that Mr. Halstead properly adhered to the Court's construction of "second shell." d/e 102.

On September 10, 2026, Defendants filed the instant motion (d/e 108) seeking reconsideration of the Court's Opinion and Order denying Defendants' Motion to Exclude (d/e 102). In sum, Defendants argue that Halstead's testimony would be confusing because he contradicted the Court's definition of second shell by testifying that the side of the Tektonic Plate is not positioned over

the side of the wearer's head but still opined that it infringed on Plaintiff's patent. d/e 108, p. 3; d/e 68, p. 12. Defendants also argue that Halstead failed to describe why the Tektonic Plate has a "side" in his expert report. Plaintiff argues in response that Defendants are merely rehashing arguments already made and ruled upon. d/e 130, pp. 1-2.

## II. LEGAL STANDARD

### A. Motion for Reconsideration

A Motion for Reconsideration can be filed under either Rule 54(b) or Rule 59(e). Rule 54(b) is the proper vehicle for a movant seeking reconsideration for orders "other than final judgments," as here. Katz-Crank v. Haskett, 2014 WL 3507298, at *2 (S.D. Ind. July 14, 2014). Regardless of the rule under which the movant seeks relief, courts apply "largely the same standard." Boone v. Illinois Dep't of Corr., 2023 WL 1529411, at *2 (C.D. Ill. Feb. 3, 2023). That is, "[a] court may grant a motion to reconsider where a movant demonstrates a manifest error of law or fact." Id. However, a Motion for Reconsideration "is not a vehicle to rehash an argument the court has already rejected or to present legal arguments that were not presented earlier." Wilkins v. Just Energy

Grp., Inc., 171 F. Supp. 3d 798, 801 (N.D. Ill. 2016). Accordingly, the Court assesses whether it made a manifest error of law or fact when it held that Halstead's expert report "properly adhere[d] to this Court's construction of the claim term 'second shell.'" d/e 102, p. 15.

**B. Expert Testimony**

Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), govern the admissibility of expert opinions. Golpalratnam v. Hewlett-Packard Co., 877 F.3d 771, 778 (7th Cir. 2017). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. The Court must ensure that (1) the expert is qualified; (2) the expert's methodology is reliable; and (3) the expert's testimony is relevant, i.e., will help the jury understand or

decide the case. Golpalratnam, 877 F.3d at 778–79. "If the proposed expert testimony meets the Daubert threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" Lapsley v. Xtek, Inc., 689 F.3d 802, 805 (7th Cir. 2012) (quoting Daubert, 509 U.S. at 596).

For expert testimony to comply with Federal Rules of Evidence 403 and 702, three things must be in concert: (1) the patent (specification and claims), (2) the Court's claim construction, and (3) the expert's testimony. Put another way, the expert's testimony must comport with the Court's claim construction, which is derived from—and therefore must comport with—the patent claims and specification. A gap between any of these links risks confusing the jury. SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB, 820 F.3d 419, 429 (Fed. Cir. 2016) (claims "must always be read in light of the specification"); DESA IP, LLC v. EML Techs., LLC, 211 F. App'x 932 (Fed. Cir. 2007) (expert testimony must be "evaluated in a manner that 'fully comports with specification and the claims' and 'preserve[s] the patent's internal coherence') (quoting Markman v.

Westview Instruments, 517 U.S. 370, 390 (1996)). The court looks to the patent specification as "the single best guide to the meaning of a disputed term." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Expert testimony "can be both powerful and quite misleading." Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC, 127 F.4th 1340, 1349 (Fed. Cir.), cert. denied, 146 S. Ct. 187, (2025) (quoting Daubert, 509 U.S. at 595). Accordingly, the Court's gatekeeping function under Rule 702 "is an important one." Id. "Rule 702 compels a district court to consider whether the expert testimony would be misleading or confusing in the context of the trial." United States v. Hall, 165 F.3d 1095, 1104 (7th Cir. 1999) (internal quotations omitted). Expert testimony "untethered from the district court's claim constructions" can constitute "methodological unsoundness . . . that provides an independent basis" for inadmissibility. Trudell, 127 F.4th at 1349–50 (vacating the jury's finding of infringement and remanding for a new trial where an expert's testimony directly contradicted the court's claim construction order); Phillips v. AWH Corp., 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("[A] court should discount any expert testimony

'that is clearly at odds with the claim construction mandated by the claims themselves[.]'") (quoting Key Pharms. v. Hercon Labs. Corp., 161 F.3d 709, 716 (Fed.Cir.1998)).

## III. ANALYSIS

As described above, the patent specification helps to define the claims and the terms therein, which guide the Court's claim construction. The expert's testimony must comport with the claim construction and thus the patent to aid the trier of fact. DESA IP, 211 F. App'x at 937 (expert testimony must preserve the patent's internal coherence).

### A. The Plaintiff's Patent

Beginning with the patent specification, Plaintiff does not dispute that each figure in the specification indicates that the second shell has a top, side, front, and rear attached to the helmet. d/e 68-2, pp. 3-6 (depicting Figures 1-4). Even if Plaintiff could dispute this, the specification states that "[t]he shell has a top [], a side [], a front [], and a rear []." d/e 68-2, p. 10 ('817 patent, col. 3 ll. 30-31). In each depiction before the Court, each portion is present and positioned over the corresponding part of the wearer's head.

As to the claims, the disputed Claim No. 27 describes a "second shell." '817 patent, col. 12 l. 42. That is the shell described in the prior paragraph as having a top, side, front, and rear that is placed outward the helmet and positioned over the corresponding part of the wearer's head. There is nothing in the specification or the claims to suggest that the "second shell" could mean something other than the Plaintiff's definition.

**B. The Court's Claim Construction Order**

Proceeding to the Court's claim construction, the Court construed "second shell" in accordance with the Plaintiff's own definition—one having a top, side, front, and rear being attached outward the helmet. '817 patent, col. 3 ll. 30-31. The Court acknowledged that Plaintiff "act[ed] as his own lexicographer" in providing this definition. d/e 64, p. 20.

Generally, the words of a claim are "given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." Thorner v. Sony Computer Ent. Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012). One exception to this rule is that a patentee's own words control where he "sets out a definition and

acts as his own lexicographer," provided the lexicography is sufficiently clear. Id. Plaintiff did just that in defining the second shell as one having a top, side, front, and rear attached outward the helmet.

Any uncertainty about these terms is resolved by looking at the figures and depictions in the specification, each of which makes clear that the portions of the second shell are labeled in accordance with the part of the wearer's head over which the second shell rests. Vitronics, 90 F.3d at 1582 (describing the specification as "the single best guide" to define a claim term). There is no figure or depiction in which a portion of the second shell is not positioned over the corresponding part of the wearer's head. To define "second shell" any other way would be to wrest control of the definition away from the patentee with no basis to state that his lexicography was not sufficiently clear.

Further, to broaden the claims by reading out the portion of the "second shell" describing a top, side, front, and rear would be to read out a limitation present in each definition and depiction before the Court. Their presence in each definition and figure demonstrates that the "very character of the invention requires"

each portion to "be a part of every embodiment." Alloc, Inc. v. Int'l Trade Comm'n, 342 F.3d 1361, 1370 (Fed. Cir. 2003). Relatedly, that each depiction shows the top, side, front, and rear as labeled in accordance with the part of the wearer's head it is positioned over suggests that the shell's positioning is likewise part of the "very character of the invention," thus "requir[ing] the limitation be a part of every embodiment." Id. In short, each portion must be present and each portion must be positioned over the corresponding part of the wearer's head.

### C. The Expert's Testimony

Sections III.A and III.B *supra* make clear that, in the Plaintiff-patentee's own materials, the "second shell" is defined as a shell that is attached to the helmet and has a top, side, front, and rear labeled to match the part of the head it is positioned over.

#### 1. The Defendants' Motion for Reconsideration of Defendants' Motion to Exclude Plaintiff's Expert Peter D. Halstead; Or, in the Alternative, for O2 Micro Clarification of the Court's Construction of "Second Shell"

Against this construction, the Court now assesses whether Halstead properly adhered to it.

The Court holds that he did not. Across the expert report and deposition, Halstead either does not consider the Court's claim construction for "second shell," or offers another definition, or testifies that the accused product does not fall within the Court's construction.

First, the report makes no mention of how the Court's claim construction order states that each portion of the second shell is "positioned over" the corresponding part of the wearer's head. The Court's order is listed as an exhibit to Halstead's report, but specific language from the Court's order is absent. d/e 68-3, p. 45 (Exhibit D). Defendants are correct that the only reflection of Halstead's view as to what counts as a "side" is the photographs included as exhibits to his report. One such photograph is below.



d/e 68-3, p. 84. Though Defendants make much of the fact that the photographs may not have been prepared by Halstead himself, of equal concern is that the report does not apply the Court's claim construction language or provide any other text explaining the labels.

Further, the deposition did not provide what the report lacked. Halstead expressed uncertainty about what a side is, but certainty about what it is not—"positioned over" the side of head, as the Court's claim construction requires. d/e 94, p. 166-180 (Halstead Dep. Tr., 166-180) (Halstead stating variously that the side was just the side of the piece of plastic, or was so labeled because it would make sense to someone installing the plate, or that the definition was "semantics"); (Halstead Dep. Tr., 171:16-22) (Halstead replying "that's correct" when asked to confirm that the "side" of the Tektonic Plate is "not positioned over the side of the head").

Halstead ultimately concluded that the only way to determine if there is a "side" is to assess whether there is a shell with a surface adjacent to the wearer's earholes. d/e 94, p. 210 (Halstead Dep. Tr., 210:22-25) ("[I]f you had an ear hole on the left, and an ear hole on the right, then that surface that was adjacent to those

ear holes would be the sides[.]"); Id. at 210:12-25 (Halstead explaining that he "[doesn't] think there's another way" he could determine if a second shell has a side). Because it cannot be disputed that the Tektonic Plate has no earholes, the deposition testimony must stand for the fact that the Tektonic Plate does not have a side either because (1) it is not "positioned over" the side of the head or because (2) it lacks earholes. Id. at 171:16-22; Id. at 210:22-25.

Accordingly, the Court holds that it committed a manifest error of law when it determined that Halstead properly adhered to the Court's construction of the term "second shell." Squaregles LLC, V. Laltitude LLC, 2026 WL 2546817, at *4 (C.D. Cal. May 28, 2026) ("[E]xperts are required to apply the court's claim construction to their analysis."); Acantha LLC v. DePuy Synthes Sales Inc., 406 F. Supp. 3d 742, 752 (E.D. Wis. 2019) ("While an expert can offer an opinion on how a court's claim construction should [apply to the facts], the expert cannot offer an opinion that contradicts or disregards the court's claim construction rulings."); Id. at 753 (excluding expert testimony as inconsistent with the

Court's claim construction). Summarizing the above, the report and deposition either:

(1) fail to consider the Court's construction (e.g., by failing to apply the relevant language in the report and deposition); or

(2) contradict the Court's construction (e.g., by saying that the Tektonic Plate has a "side" because it is the side of the piece of plastic); or

(3) conclude that the accused product does not meet the Court's construction of "side" (e.g., by concluding that the side of the Tektonic Plate is not "positioned over" the side of the head); or

(4) provide a definition without acknowledging that the accused product could not fit within that definition (e.g., by acknowledging <u>in effect</u> that the side would have to be positioned over the side of the head when he said that the side would be the surface adjacent to the earholes but did not acknowledge that the Tektonic Plate has no earholes (Halstead Dep. Tr., 210:22-25) ("[I]f you had an ear hole on the left, and an ear hole on the right, then that surface that was adjacent to those ear holes would be the sides[.]")).

The Court considered the possibility that, when Halstead said the side of the Tektonic Plate was not positioned over the side of the wearer's head, he meant that it does not "cover" the side of the head. But by the time of the deposition, the Court had already explained in its claim construction order that each portion of the second shell does not need to fully cover the part of the head it was named for, it need only be positioned over it. d/e 64, p. 16.

This too flows from the patent specification and claims. The Court did not use the word "cover" as a limitation on Claim No. 27 because neither the patent specification nor the claims did so—the specification described the outer shell as "substantially covering" the helmet, not covering it, and some depictions did not make clear whether each portion of the second shell fully covered the portion of the head it was positioned over. '817 patent, col. 4 ll. 28-30. Because "the very character of the invention" did not require this limitation, the Court did not so limit the claim. Alloc, 342 F.3d at 1370.

Either Defendants' counsel or Plaintiff's expert could have provided more clarity in the deposition. But where Defendants' counsel stuck to the language of the claim construction, and Plaintiff's expert did not apply it, deviated from it, or agreed the accused product would not be covered by it, the expert cannot be found to have properly adhered to it.

**2. The Defendants' Motion to Exclude Halstead from Testifying that the F7 Helmet has a "Second Shell" or Infringes on the '817 Patent**

Having concluded that Halstead failed to properly adhere to the Court's claim construction, the Court now reconsiders the

Defendants' Motion to Exclude Halstead from Testifying that the F7 Helmet has a "Second Shell," and, by extension, infringes on the '817 Patent. d/e 68. As described above, Rule 702 compels the Court to consider whether the expert testimony "would be misleading or confusing in the context of the trial." Hall, 165 F.3d at 1104 (internal quotations omitted); Trudell, 127 F.4th at 1350 (expert's using definitions other than those set out in the Court's claim construction provided an "independent basis" to vacate the jury's finding of infringement and remand the case for a new trial). Rule 403 holds that the Court may exclude relevant evidence if "its probative value is substantially outweighed" by the risk of confusing or misleading the jury. FED. R. EVID. 403.

Methodological errors like improper application of the Court's claim construction can make expert testimony excludable as unreliable under Rule 702 or as irrelevant or confusing under Rule 403. Trudell, 127 F.4th at 1350. But Rule 702 also includes a relevance component. Hall, 165 F.3d at 1104. Therefore, whether under Rule 702 or Rule 403, the Court assesses whether Halstead's testimony would be reliable and helpful to the jury.

The Court holds that it is not and holds that Halstead is excluded from testifying that the F7 has a "second shell." First, the report and deposition either did not apply the Court's claim construction language or applied definitions other than the Court's to determine whether the accused product has a "side." These are independently sufficient bases to exclude Halstead's testimony under Rule 702. Trudell, 127 F.4th at 1350.

There is also risk of confusion sufficient to exclude the testimony. Were Halstead to testify at trial that the Tektonic Plate does have a side, the jury would be presented with expert testimony based on a premise that contradicts the Court's construction—that the Tektonic Plate is not "positioned over" the side of the head. Halstead would have to explain how his infringement opinion stayed the same despite first saying in his deposition that the side of the Tektonic Plate is not positioned over the side of the head and then testifying at trial that it is.

Similarly, if testimony were to reference a definition of a "side" other than the Court's, the jury may be tempted to use Plaintiff's definition or to lose sight of the fact that the definition is governed by the Court's claim construction order. Even if the Court

reminded the jury that the claim construction order provides the relevant definition, the jury would be left to wonder how Halstead could provide an opinion he has already contradicted or provided an opinion without using the Court's required definition (which, again, ultimately flows from the Plaintiff's patent specification and claims).

This is why the Court defines claim terms. The claim construction process, including defining relevant terms, is a matter of law that starts with analysis of the patent specification and claims. The jury's job is to determine whether an accused product lies within or without the definitions in the Court's claim construction, not to determine which one of the parties'—or which one of Plaintiff's—definitions makes the most sense. Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1582 (Fed. Cir. 1995) (Claim construction, or determining the "proper scope" of the claims, is a "question of law," while infringement is a "question of fact.").

The Court is not unsympathetic to the impact of excluding Plaintiff's expert testimony on the eve of trial. But the Court cannot ignore that, on the eve of trial, it has no way to know how Halstead could explain that the Tektonic Plate has a side in a way that would

not confuse the jury. The Court has no ability to determine whether he would apply the Court's definition from the claim construction order (and, if so, how he would explain that he already said that definition would not cover the Tektonic Plate) or whether he would use one of the other definitions implied or expressed in his report or deposition (and, if so, how he would explain that at least one of those definitions would also require the conclusion that the Tektonic Plate does not have a side).

**3. Plaintiff's Supplement Response to Defendants' Motion for Reconsideration**

The Plaintiff filed a Supplemental Response to Defendants' Motion for Reconsideration on September 26, 2026 (d/e 136). Plaintiff argues again that the Court did not require each portion of the second shell to "cover" the corresponding part of the head. d/e 136, p. 2. But the Court has already acknowledged this—the Court agreed with Defendants that each portion was "positioned over" the side of the head, clarifying that this "positioning and orientation" of each portion does not require that the second shell "cover" each the corresponding part of the head. d/e 64, pp. 15-16. The Court separately explained why neither "cover" nor "substantially cover"

were required limitations—because those terms refer to only a subset of figures—while each portion of the shell being positioned over the corresponding part of the wearer's head is present in each figure. d/e 64, pp. 15-16. Similarly, that there has been little to no dispute that the Tektonic Plate has a top, front, and rear suggests that the parties already understood that each portion of the second shell need not "cover" the corresponding part of the head (though the Court recognizes this is ultimately an issue for the jury). The Court did not import a limitation from the specification into the claims, as Plaintiff alleges—the Court used the specification as context to define the claim terms.

## IV. CONCLUSION

Because the Court committed a manifest error of law when it held that Halstead properly adhered to the Court's claim construction, the Defendants' Motion for Reconsideration is GRANTED.

Given the substantial risk of unreliable and confusing testimony being sent to the jury, Defendants' Motion to Exclude Halstead from testifying that the second shell has a side is GRANTED. Because Halstead cannot testify that the Tektonic Plate

has a side and because a side is a required limitation of the claim per Plaintiff's specification, Halstead cannot testify that the F7 infringes on the '817 Patent.

**IT IS SO ORDERED.**
**ENTERED: September 26, 2026.**
**FOR THE COURT:**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**